# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTHER D. ROSAS, | Case No.  1:15-cv-00002-LJO-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S SOCIAL SECURITY APPEAL BE DENIED |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 21, 22, 23) |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Esther Rosas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone for findings and recommendations to the District Judge.

Plaintiff suffers from depression, insomnia, a tumor in her thyroid, high parathyroid level, and pain in her hip, left leg, and arm.  For the reasons set forth below, Plaintiff's Social Security appeal should be denied.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the current Title XVI application for supplemental security income on March 21, 2012, alleging disability beginning on March 19, 2012. (AR 87-106.) On August 15, 2012, Plaintiff's claim was initially denied, and was denied upon reconsideration on July 2, 2013. (AR 46-54.) Plaintiff requested and received a hearing before Administrative Law Judge Daniel Heely ("the ALJ"). On January 14, 2014, Plaintiff appeared at a hearing. (AR 633-51.)

On March 5, 2014, the ALJ denied Plaintiff's application for supplemental security income. (AR 17-31.) Plaintiff appealed to the Appeals Council. (AR 12-13.) On October 31, 2014, the Appeals Council denied Plaintiff's request for review. (AR 6-9.)

### A.    Hearing Testimony

Plaintiff appeared with counsel and testified at a hearing on January 14, 2014. (AR 633-51.) Plaintiff's counsel stated that they were still waiting for medical records from a treating source. (AR 636.)

Plaintiff completed eight or nine years of schooling, but did not graduate high school and did not get a GED. (AR 637.) The only further schooling or job training that she has done is CNA training at a hospital. (AR 638.)

Plaintiff stated that her most serious physical problem was her right hip and left leg. (AR 639.) Plaintiff's right hip just started hurting and she cannot sleep on that side. (AR 639.) She indicated that she had not had x-rays and that her pain was not as a result of an accident or fall. (AR 639-40.) The only surgeries that Plaintiff had were to remove a tumor behind her thyroid and to remove a lump on her left breast. (AR 640.) She has pain, swelling, and itching in her left breast. (AR 640.) Plaintiff has high blood pressure, which she takes medication for, but she states that the medication does not help. (AR 641.) Plaintiff has problems falling asleep and she is taking medication for that, but she states that the medication does not help. (AR 641-42.)

Plaintiff testified that she has lots of mental problems that make her feel stressed out or upset and that she takes medications, but they do not help. (AR 642-43.) Plaintiff had been going to the Paradise Clinic for her mental problems. (AR 642.) She saw whatever doctor was

1    available, but the last doctor she saw for her mental problems was Dr. Whittaker at McKenna
2    Medical Group.  (AR 643.)

3        Plaintiff stated that she had been living with her daughter temporarily for four or five
4    months.  (AR 643.)  She had previously lived with other relatives.  (AR 643.)  Plaintiff testified
5    that she does not do anything around the house, and she specifically does not microwave food,
6    wash dishes, wash clothes, or do any housework.  (AR 643-44.)  She testified that she does not
7    watch TV during the day and that she just sits in the living room, which is where she also sleeps,
8    and thinks and sleeps if she can.  (AR 644.)  She does not drive and if she goes to the grocery
9    store, her daughter takes her.  (AR 644-45.)  She receives food stamps.  (AR 644-45.)  She does
10   not go to any religious services, out to restaurants, or out to visit others, and the last time she did
11   was six or seven months before the hearing when she went to Walmart.  (AR 645.)

12       Plaintiff testified that she cannot work because when she tries to do stuff, she "just can't
13   do it."  (AR 645.)  She testified that mental issues more than pains or other things prevent her
14   from doing things.  (AR 646.)  She testified that she cannot get to a job in the morning on a
15   regular basis.  (AR 646.)  She has trouble getting to appointments on time and her daughter
16   reminds her of her appointments.  (AR 646.)  She cannot handle the stress of a workweek.  (AR
17   646.)  Plaintiff held back tears and broke a little bit during the hearing and she said that that is
18   normal for her.  (AR 646.)  Plaintiff testified that she has problems working around people
19   because she thinks that others think she is weird or ugly.  (AR 647.)  She isolates herself and
20   stays away from people.  (AR 647.)

### B.    ALJ Findings

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since March 21, 2012, the application date.

- Plaintiff has the following severe impairments: status post left breast surgery and status post thyroid surgery.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform medium work except that she can sit, stand, or walk six hours each out of an eight hour workday with normal breaks, and lift or carry up to 50 pounds occasionally and 25 pounds frequently.  She can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs.  She can never work around hazards, dangerous moving machinery or unprotected heights.  She cannot operate motor vehicles.

- Plaintiff is capable of performing past relevant work as a nurse's assistant, DOT #355.674-014, medium, unskilled work.

- Plaintiff has not been under a disability as defined in the Social Security Act since March 21, 2012, the date the application was filed.

(AR 17-31.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520; Batson v. Commissioner of Social Sec. Admin, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not,

1    proceed to step five.

2    Step five: Does the claimant's RFC, when considered with the claimant's age,
     education, and work experience, allow him or her to adjust to other work that
3    exists in significant numbers in the national economy? If so, the claimant is not
     disabled. If not, the claimant is disabled.
4

5    Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

6    Congress has provided that an individual may obtain judicial review of any final decision

7    of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).

8    In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

9    Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

10   disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

11   Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a

12   scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

13   (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,

14   considering the record as a whole, a reasonable person might accept as adequate to support a

15   conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

16   Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

17   "[A] reviewing court must consider the entire record as a whole and may not affirm

18   simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

19   Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

20   this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

21   for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

22   susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

23   upheld.").

24                                              **IV.**

25                                **DISCUSSION AND ANALYSIS**

26   Plaintiff raises five issues in this appeal.  Plaintiff argues that the ALJ erred by: (1)

27   failing to find Plaintiff's mental impairments were severe impairments at step two of the

28   sequential analysis; (2) rejecting the opinion of Dr. Dahl, a consultative examiner; (3)

1  discrediting the third party testimony of Arlene Rosas and Sandy Torres; (4) rejecting Plaintiff's

2  testimony; and (5) failing to develop the record regarding Plaintiff's bone disease.

3  **A.     Mental Impairments at Step Two of the Sequential Analysis**

4  Plaintiff argues that the ALJ erred by finding that her mental impairments were not

5  severe at step two of the sequential analysis.  Defendant counters that the ALJ considered all of

6  Plaintiff's impairments and limitations, not only the impairments identified as severe, when he

7  determined Plaintiff's residual functional capacity.

8  Under the Social Security Act, disability is defined as the "inability to engage in any

9  substantial gainful activity by reason of any medically determinable physical or mental

10  impairment which can be expected to result in death or which has lasted or can be expected to

11  last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The burden

12  is on the claimant to prove that they are disabled at steps one through four, at step five the burden

13  shifts to the Commissioner to show that there are a significant number of jobs in the national

14  community that the claimant can perform.  Bray v. Commissioner of Social Security Admin.,

15  554 F.3d 1219, 1222 (9th Cir. 2009).

16  As described above, at step two the ALJ is to consider the medical severity of the

17  impairments to determine if they meet the durational requirements under the Act.  20 C.F.R. §

18  404.1520(a)(4)(ii).  A severe impairment is an impairment or combination of impairments that

19  significantly limits the claimant's physical or mental ability to do basic work activities.  20

20  C.F.R. § 404.152(c).  Basic work activities are the abilities and aptitudes necessary to do most

21  jobs. 20 C.F.R. § 404.1521(b).  "An impairment is not severe if it is merely 'a slight abnormality

22  (or combination of slight abnormalities) that has no more than a minimal effect on the ability to

23  do basic work activities.' "  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R.

24  No. 96–3(p) (1996)).  Courts have found that step two is "a de minimis screening device [used]

25  to dispose of groundless claims."  Webb, 433 F.3d at 687 (quoting S.S.R. No. 85–28 (1985);

26  Smolen, 80 F.3d at 1290).

27  The Court finds that any error committed by the ALJ in failing to find that Plaintiff's

28  mental impairments were severe at step two was harmless.  While  the  ALJ  failed  to  mention

Plaintiff's Major Depressive Disorder and Post Traumatic Stress Disorder ("PTSD") at Step Two and Step Three of the analysis, the ALJ did conduct an in-depth analysis of Plaintiff's intellectual functioning at Steps Four and Five.  (AR 24-29.)  Adding Major Depressive Disorder and PTSD as additional severe impairments at Step Two would have had no effect on the ultimate question of disability in this action in light of the ALJ's consideration of Plaintiff's mental impairments at Steps Four and Five.  See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1054-55 (9th Cir. 2006) (harmless error where mistake was non-prejudicial to the claimant or irrelevant to the disability conclusion); Crawford v. Colvin, No. 2:13-cv-2278-EFB, 2015 WL 1393231, at *3 (E.D. Cal. Mar. 25, 2015) (any error at step Two harmless when the impairments were considered in assessing plaintiff's RFC).  Since Plaintiff "passed" the "de minimis screening device" at Step Two, any error by the ALJ in failing to include Plaintiff's mental impairments as "severe impairments" at Step Two was harmless.  Therefore, the Court's analysis proceeds to determine whether the rejection of Plaintiff's credibility was proper.

## B.     Plaintiff's Credibility

Plaintiff argues that the ALJ erred by finding her not credible. The Court notes that the ALJ's findings regarding Plaintiff's credibility also have an impact on Plaintiff's arguments concerning the lay witness testimony and the rejection of Dr. Dahl's opinion.   Defendant contends that the ALJ permissibly found that Plaintiff was not credible because Plaintiff's current application states that she was working on March 28, 2011, which is the date that she previously filed an application for benefits; Plaintiff's statements to Dr. Dahl were inconsistent; Plaintiff's treatment was inconsistent with her allegations, and Plaintiff's daily activities were inconsistent with her claims of disability.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to

produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

The ALJ can only reject the claimant's testimony regarding the severity of his or her symptoms by offering "clear and convincing reasons" for the adverse credibility finding.[1] Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors.  Lingenfelter, at 1040; Thomas, 278 F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

The ALJ found:

> In this case, I find that the claimant's statements about her impairments and functional limitations are only partially credible.

---

[1] Defendant argues that the clear and convincing standard should not apply to evaluation of Plaintiff's testimony. However, the Ninth Circuit has rejected this argument in Garrison v. Colvin, 759 F.3d 995, 1015 n.18 (9th Cir. 2014).

The claimant has not been entirely forthright with regard to her work activity.  I note that the claimant previously filed an application on March 28, 2011.  She now discloses that she in fact worked from 2010 to 2012, full time.

The claimant was less than forthright with the consultative psychologist (Exhibit 8F).  She reported a seventh grade education, wherein she previously said she had a tenth grade education (Exhibit 12E).  She claimed that she did not know how to use the Internet, yet she has an email address (Exhibit 12E, page 1).  She claimed she was in special education, yet she previously denied being in special education (Exhibit 12E).

The level of treatment that the claimant has received is inconsistent with her allegations.  She was seen primarily upon routine follow up.

Her testimony was less than fully credible.  She then said she sleeps during the day.  She denied cooking, driving or doing any household chores.  She does not watch television.  She said she goes grocery shopping, then said that the last time she went anywhere was six or seven months earlier, when she went to Wal-Mart.  These statements are contradicted by her earlier statement submitted to the Administration in June 2012 (Exhibit 4E) in which she indicated she cooks, does the laundry, goes to church, watches television, and has visitors.  Her daughter reported in April 2013 that she drives, is able to go outside alone, does the laundry, cooks, watches television, and handles her finances (Exhibit 8E).  On March 12, 2013, chart notes indicate that the claimant had been "in San Diego 3/13" (Exhibit 16F, page 4). She testified that medication does not help her high blood pressure, which is inconsistent with the evidence.  She said that sleep medication does not help, yet according to her she continues to take it (Exhibit 14E).

(AR 26-27.)

1.   Plaintiff's Work History

First, the ALJ found that Plaintiff has not been forthright with regard to her work activity.  The ALJ noted that Plaintiff previously filed an application on March 28, 2011, but now discloses that she in fact worked from 2010 to 2012, full time.  (AR 27.)

Plaintiff argues that the record does not indicate whether she was working during the time period that her application was pending, March 28, 2011, to June 28, 2011.  Plaintiff's March 28, 2011 application indicated that she had an inability to function and/or work as of July 15, 2008.  (AR 32-33.)  On March 19, 2012, Plaintiff submitted a work activity report-self-employment, which stated that she worked cleaning houses from September 2010 through March 19, 2012, and that she worked an average of fifty hours a week.  (AR 143-44.)  Plaintiff stated that she was the sole owner of Professional Cleaning Service.  (AR 143.)  On Plaintiff's June 1, 2012 work history report, she stated that she did housecleaning for a private business from 2010 through

1  May 9, 2012.  (AR 170.)  Plaintiff indicated that she worked 8-9 hours per day for 5-6 days per

2  week and made $650 per week at her housecleaning job.  (AR 176.)  Although Plaintiff tries to

3  argue that there is only an inconsistency for a three month period of time, Plaintiff was not

4  truthful about her work activity from September 2010 through June 28, 2011.

5       Plaintiff contends that her low earnings for September 2010 through March 2012 suggest

6  that she was not working consistently through the time period.  Plaintiff stated that for self-

7  employment, her gross income was $7,600 and net income was $3,000 in 2010, her gross income

8  was $23,000 and net income was $9,000 in 2011, and her gross income was $4,000 and net

9  income was $2,250 in 2012.  (AR 144.)  While her net income may have been low, Plaintiff

10  received $23,000 in gross income in 2011.  Plaintiff did not indicate on any of the forms that she

11  worked sporadically or only during certain periods of time in 2011.  Also, Plaintiff received

12  income in 2010 from her housecleaning business, but she stated in her prior application for social

13  security benefits that she did not work at all during 2010, which is a clear inconsistency.

14       Plaintiff argues that the record does not show whether she worked in 2011 under special

15  conditions that accommodated her impairments.  However, the issue is not whether Plaintiff did

16  or did not work under special conditions, but whether she worked at all at a time when she

17  previously stated that she did not work.  While Plaintiff argues in her reply that the ALJ could

18  have developed the record regarding this issue, she did not argue this point in her opening brief.

19  Raising new arguments in a reply brief is disfavored, but a district court has broad discretion to

20  consider them.  See Lane v. Dep't of Interior, 523 F.3d 1128, 1140 (9th Cir. 2008); Glenn K.

21  Jackson Inc. v. Roe, 273 F.3d 1192, 1202 (9th Cir. 2001). In this instance, the Court will not

22  consider the arguments regarding the ALJ developing the record further regarding Plaintiff's

23  work history during 2010 and 2011 since this issue was not raised in the opening brief.

24       It is clear that Plaintiff has not been forthright about her work activity.  Therefore, the

25  ALJ properly considered, and there is substantial support in the record, that Plaintiff's

26  inconsistent statements undermined her credibility.  Thomas, 278 F.3d at 959; Light v. Soc. Sec.

27  Admin., 119 F.3d 789, 792 (9th Cir. 1997).

28  \ \ \

2.   Plaintiff's Inconsistent Statements to Dr. Dahl

Second, the ALJ found that Plaintiff was less than forthright with Dr. Dahl, the consultative examiner.  See Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (noting that an ALJ may discredit a claimant due to inconsistent testimony); Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (stating that ALJ did not err by considering that claimant left his job because he was laid off, rather than because he was injured).

On July 21, 2012, Plaintiff told Dr. Dahl that she had a seventh grade education, she did not know how to use the internet, and she was in special education.  (AR 368-69).  However, on September 23, 2013, Plaintiff submitted a Disability Report that indicated that she has a tenth grade education, she has an email address, and she did not attend special education classes.  (AR 227, 229.)

Plaintiff argues that the discrepancies identified by the ALJ are minor ones that are not material to her claim of disability and that are evidence of the impaired memory and concentration revealed by Dr. Dahl's mental status examination.  Defendant counters that the reason for the inconsistencies is immaterial, because the inconsistencies substantiate that the information Plaintiff provided is unreliable.

During her examination with Dr. Dahl, Plaintiff was able to recall information, including her date of birth, phone number, and address.  (AR 369.)  As part of the mental examination that Dr. Dahl conducted, Plaintiff was able to repeat six digits forward and three digits in reverse and repeat three unrelated words five times and recalled one of them after a brief delay.  (AR 369.) Plaintiff was able to identify Obama as the current President and Bush as the preceding President.  (AR 369.)  Plaintiff argues that her inability to subtract serial 7s or serial 3s,  to follow a three-step command without repetition of the command sequence, and to spell the word world in reverse sequence are evidence of her impaired memory and concentration.  However, these are examples of Plaintiff's difficulty with calculations and concentration, and not her memory.  Therefore, Plaintiff was able to recall information during her examination with Dr. Dahl and Plaintiff has not explained her inconsistencies.

When the Court considers all of Plaintiff's inconsistent statements to Dr. Dahl together,

1  the Court finds that Plaintiff made inconsistent statements to Dr. Dahl that show that she is less

2  than candid.  The ALJ properly considered, and there is substantial support in the record, that

3  Plaintiff's inconsistent statements undermined her credibility as to her limitations.  Thomas, 278

4  F.3d at 959; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

5           3.     Level of Treatment

6           Plaintiff asserts that her conservative course of treatment is not a proper reason to reject

7  her testimony because the ALJ did not indicate that additional treatment would have supported

8  her testimony and she did not always receive medical care because of her status as a Medically

9  Indigent Adult ("MIA").  Plaintiff also argues that there is no evidence that her level of treatment

10  was so conservative that it discredited her testimony.  Defendant counters that the ALJ noted that

11  Plaintiff was seen primarily for routine follow-up and that Plaintiff's psychotropic medications

12  are conservative treatment which is inconsistent with her allegations.  Defendant states that even

13  though Plaintiff cites lack of insurance as her reason for not seeking more aggressive treatment,

14  the ALJ reasonably found that Plaintiff's consistently routine treatment of medication and

15  therapy was inconsistent with her allegations of disabling limitations.  Defendant also contends

16  that the ALJ did not question the frequency of Plaintiff's treatment.  Plaintiff replies that she was

17  referred to inpatient psychiatric care, so there was an indication that she needed a higher level of

18  care.

19           While "a conservative course of treatment can undermine allegations of debilitating pain,

20  such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a

21  good reason for not seeking more aggressive treatment."  Carmickle v. Astrue, 533 F.3d 1155,

22  1162 (9th Cir. 2008) (citing Orn v. Astrue, 495 F.3d at 638).

23           On September 5, 2012, Dr. Kathleen Eve indicated in her notes that she had tried to refer

24  Plaintiff to DBHC for depression, but it was not a covered MIA benefit and the referral was

25  denied.  (AR 465.)  Therefore, on this record, the Court finds that Plaintiff's level of treatment is

26  not a clear and convincing reason supported by substantial evidence to discredit Plaintiff.

27           4.     Activities of Daily Living

28           Plaintiff argues that the ALJ erred in finding that Plaintiff's daily activities are

12

inconsistent with her allegations of disability.  Defendant contends that Plaintiff's daily activities indicate that she is less impaired than she claims.  Plaintiff argues that the ALJ improperly found that Plaintiff's daily activities are inconsistent with her testimony because the ALJ does not explain why her activities are inconsistent with her testimony that she is unable to perform full-time work in a competitive work environment.

However, there are two ways for an ALJ to "use daily activities to form the basis of an adverse credibility determination: if the claimant's activity contradicts his testimony or if the claimant's activity meets the threshold for transferable work skills."  Phillips v. Colvin, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014); Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009); Molina, 674 F.3d at 1112-1113.  Review of the ALJ's opinion in this instance shows that the ALJ found that Plaintiff's activity contradicts her testimony.

In particular, an ALJ may consider inconsistencies between a claimant's activities and his subjective complaints.  See Valentine, 574 F.3d at 693 (ALJ properly determined that the claimant's daily activities "did not suggest [the claimant] could return to his old job at Cummins, but . . . did suggest that [the claimant's] later claims about the severity of his limitations were exaggerated"); Molina v. Astrue, 674 F.3d at 1112 (the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms") (internal citation omitted).

On June 2, 2012, Plaintiff indicated in her Function Report to the Social Security Administration that she cooked, did laundry, went to church, watched television, and had visitors.  (AR 162-69.)  On April 22, 2013, Sandy Torres, Plaintiff's daughter indicated in a Function Report-Adult-Third Party that Plaintiff drives, is able to go out alone, sometimes does laundry, prepares her own meals, such as sandwiches and frozen dinners, she watches TV, and handles her finances.  (AR 191-199.)  On March 12, 2013, Dr. Gorman indicated that Plaintiff went to San Diego in March 2013.  (AR 558.)

However, at the hearing, Plaintiff testified that she that she does not do anything around the house, and she specifically does not microwave food, wash dishes, wash clothes, or do any housework.  (AR 643-44.)  She testified that she does not watch TV during the day and that she just sits in the living room and thinks and sleeps if she can.  (AR 644.)  She testified that she

1   does not drive and she does not go to any religious services, out to restaurants, or out to visit

2   others, and the last time she did was six or seven months before the hearing when she went to

3   Walmart.  (AR 644-45.)  She testified that her daughter takes her to the grocery store.  (AR 644.)

4        Plaintiff also testified at the hearing that her blood pressure medication and her sleep

5   medication do not help.  (AR 641-42.)   However, Plaintiff continues to take her sleep

6   medication.  (AR 239.)  Plaintiff's blood pressure is lower when she is on her medication.  On

7   February 20, 2013, Plaintiff's blood pressure was 158/80 and she was prescribed a blood

8   pressure medication. (AR 560-63.)  Plaintiff's blood pressure was 121/77 on February 25, 2013.

9   (AR 389.)  On March 12, 2013, Plaintiff's blood pressure was 147/85, and her blood pressure

10  medication was increased to a 5 mg tablet.  (AR 557.)  On April 16, 2013, Plaintiff's blood

11  pressure was 143/79.  (AR 520.)  On July 8, 2013, Plaintiff stated that she ran out of medication

12  and her blood pressure was 143/85.  (AR 516-21.)  She was prescribed a new blood pressure

13  medication.  (AR 517.)  On August 13, 2013, her blood pressure was 131/81.  (AR 511.)

14  Therefore, Plaintiff's statement that her blood pressure medication does not help her is

15  inconsistent with the evidence in the record.

16  Although Plaintiff's daily activities may not have persisted at a level that is comparable with the

17  demands of full-time work, they are inconsistent with Plaintiff's claimed limitations.  Plaintiff's

18  daily activities show an ability to maintain concentration and social functioning.  An ALJ may

19  properly consider any inconsistencies between a claimant's testimony and conduct.  See Thomas

20  v. Barnhart, 278 F.3d at 958-959.   If the ALJ's interpretation is reasonable and supported by

21  substantial evidence, then it is not the Court's role to second-guess it.  See Rollins v. Massanari,

22  261 F.3d 853, 857 (9th Cir. 2001).  Therefore, there was no error in the ALJ's consideration of

23  Plaintiff's daily activities as a factor in discrediting Plaintiff.

24        5.    Any Error by the ALJ Does Not Warrant Reversal

25        Plaintiff's inconsistent statements about work history, inconsistent statements to Dr.

26  Dahl, and daily activities are clear and convincing reasons to support the ALJ's credibility

27  finding.  See Batson v. Commissioner of Social Security, 359 F.3d 1190, 1196-97 (9th Cir.

28  2004).  Even though the ALJ erred by finding Plaintiff not credible because of her conservative

course of treatment, that error is harmless where the other reasons the ALJ offers are proper and are supported by substantial evidence.  See Carmickle, 533 F.3d at 1162 (citing Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) ["So long as there remains "substantial evidence supporting the ALJ's conclusions on . . . . credibility" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," such is deemed harmless and does not warrant reversal"]).  The Court finds that the ALJ provided clear and convincing reasons that are supported by substantial evidence in the record for the determination that Plaintiff's symptoms are not as limiting as she claimed.

### C.   The ALJ Provided Specific and Legitimate Reasons to Reject the Opinion of Dr. Dahl

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Dahl, who was an examining physician. Defendant responds that contrary to Plaintiff's contention, the ALJ provided valid reasons for giving little weight to the opinion of Dr. Dahl.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  In general, a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Similar to a treating physician, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  Lester, 81 F.3d at 831 (9th Cir. 1995).  The ALJ need not accept a treating physician's opinion that is brief, conclusory, and unsupported by clinical findings.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

\ \ \

1        1.      Relevant Medical Record

On July 21, 2012, Dr. Dahl conducted a consultative examination of Plaintiff.  (AR 367-71.)  Dr. Dahl noted that Plaintiff arrived early and was driven to the appointment by her husband.  (AR 376.)  Dr. Dahl observed Plaintiff calmly waiting in the waiting room.  (AR 376.)  Plaintiff wept during the evaluation because of the strains in her family.  (AR 367.)

Plaintiff's chief complaint was her back and she had thyroid disease starting in 2012.  (AR 376.)   Plaintiff stated that she had been physically, emotionally, sexually, and verbally abused.  (AR 368.)   Plaintiff indicated that the most stressful thing for her is living with her husband and that she cannot get free of him because she has no means of supporting herself.  (AR 368.)

Plaintiff stated that she had completed the seventh grade with failing and below average grades.  (AR 368.)  She stated that she was in special education and needed tutoring and special assistance.  (AR 368.)

Plaintiff stated that she had worked cleaning houses until May 2012.  She stated that she was not able to continue after her thyroid surgery.  (AR 368.)  Plaintiff stated that she handles her self-care, prepares meals, discusses the news, drives a car, and with the assistance of her daughter and does light housework.  (AR 369.)  She does not know how to use the internet.  (AR 369.)  She can lift and bend and walk for about 15 minutes.  (AR 369.)

Dr. Dahl noted that Plaintiff's attention and concentration were marred by easy distraction and she had reduced persistence, pace, and motivation.  (AR 369.)  Plaintiff reported fatigue, feelings of worthlessness, and guilt.  (AR 369.)  Plaintiff had normal, spontaneous speech, logical and linear process, and coherent thoughts with no hallucinations, ideas of reference, paranoia, or delusions.  (AR 369.)  Plaintiff's mood was depressed and easily irritable and she finds herself tearful.  (AR 369.)

Dr. Dahl found that Plaintiff's insight and coping are poor and her impulse control is good.  (AR 370.)  Dr. Dahl found that Plaintiff meets the criteria for major depressive disorder with depression most of the time, irritability, tearfulness, anger, insomnia, sad affect, crying much of the time, anhedonia, loss of concentration, feeling worthlessness, easily distracted, poor

motivation, pace, and persistence.  (AR 370.)  Dr. Dahl also found that Plaintiff meets the criteria for PTSD, with pernicious flashbacks to numerous incidents in which she was assaulted by her husband.  (AR 370.)  Dr. Dahl noted that Plaintiff had a GAF of 60.  (AR 370.)

Dr. Dahl found that with appropriate treatment, Plaintiff might be expected to improve, but not adequately enough to return to work.  (AR 370.)  Dr. Dahl noted that Plaintiff is in current fear of domestic violence and has flashbacks that if untreated will inhibit her return to work and that her prognosis remains guarded.  (AR 371.)

Dr. Dahl found that Plaintiff is able to perform simple and repetitive tasks, but is moderately impaired with performing detailed complex tasks.  (AR 371.)  Plaintiff can accept instructions from supervisors, but is moderately impaired because she may not retain them.  (AR 371.)  Plaintiff has moderate impairment with interacting with coworkers and the public, performing work activities consistently without accommodation, maintaining regular attendance in the workplace, completing a normal workday or workweek without interruptions from a psychiatric condition, and dealing with the usual workplace stresses.  (AR 371.)

2.    Dr. Dahl's Opinion is Based on Plaintiff's Subjective Complaints Which Are Not Credible

The ALJ gave reduced weight to Dr. Dahl's opinion.  (AR 28.)  The ALJ noted that Dr. Dahl's opinion was based on Plaintiff's subjective complaints, which the ALJ found not entirely credible.  (AR 28.)  Specifically, the ALJ found:

> At the request of the State agency, a consultative examination was conducted by psychologist Dr. Dahl on July 21, 2012 (Exhibit 8F).  She reported back pain, hip pain, insomnia, high parathyroid level, and mental symptoms.  She denied psychiatric hospitalizations or outpatient treatment.  She denied suicidal ideation.  She said her husband was physically abusing her.  She reported a seventh grade education in special education.  She worked cleaning houses until May 2012.  She denied drug or alcohol abuse.  In terms of activities of daily living, she performs self care, prepares meals, drives, and does light household chores with the assistance of her daughter.  She said she does not know how to use the Internet.  She said her symptoms had become worse after her surgery in April 2012.
>
> Upon mental status examination, Dr. Dahl noted that grooming was appropriate.  Mobility and gait were normal.  She was easily distracted.  She had reduced persistence, pace and motivation.  Thought content was coherent.  Mood was depressed.  She said she would try to sleep between 10 p.m. and 7 a.m. but would get only three to four hours of broken sleep.  She was oriented

to person, place and time.  Insight was poor.  Dr. Dahl diagnosed her with major depressive disorder and post traumatic stress disorder.  GAF was 60.  He felt she was severely impaired and unable to manage her own funds.  She can perform simple and repetitive, but not complex, tasks.  She has moderate impairment in the ability to accept instructions from supervisors and interact with coworkers or the public.  She has moderate impairment in the ability to maintain attendance in the workplace and complete a normal workday/week. She has moderate impairment in the ability to deal with usual workplace stressors.

I give this opinion reduced weight.  The claimant was less than forthright with the doctor.  She reported a seventh grade education, wherein she previously said she had a tenth grade education (Exhibit 12E).  She claimed that she did not know how to use the Internet, yet she has an email address (Exhibit 12E, page 1).  She claimed she was in special education, yet she previously denied being in special education (Exhibit 12E).  He based his findings, in part, on the subjective statements of the claimant, who I do not find entirely credible, for the reasons noted above.

(AR 28.)

Plaintiff argues that Dr. Dahl's report did not indicate that he relied on Plaintiff's subjective complaints more than on his own professional expertise and clinical observations or that he thought Plaintiff was being deceptive.  Plaintiff is correct that Dr. Dahl did not explicitly say that he was relying on Plaintiff's subjective complaints.  Defendant argues that Dr. Dahl's explanation for his diagnoses and related limitations is based almost entirely on Plaintiff's self-reporting.

An ALJ can reject a physician's opinion that is premised to a large extent on a claimant's subjective complaints that have been properly discounted.  See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing Fair v. Bowen, 885 F.2d 597, 605 (1989)); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).  However, it is improper to reject the doctor's opinion "where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."  Ryan, 528 F.3d at 1200 (quoting Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001)).

Dr. Dahl did not review objective medical data or reports from treating physicians or counselors.  The only record that Dr. Dahl reviewed was Plaintiff's SSA form 3368, which is a disability report filled out by Plaintiff.  (AR 370.)  Dr. Dahl found that Plaintiff had major depression.  (AR 370.)  Plaintiff told Dr. Dahl that she had a depressed mood "most of the time,"

cried "most of the time," and felt worthless.  (AR 370.)  Dr. Dahl found that Plaintiff had PTSD.

(AR 370.)  Plaintiff told Dr. Dahl that she had "pernicious flashbacks to numerous incidents in

which she was assaulted by her husband," which she said caused her to feel frightened,

disassociate, and hyperventilate.   (AR 370.)   Dr. Dahl found that Plaintiff was limited to

performing simple, repetitive tasks and had moderate limitations in accepting instructions from

supervisors, interacting with co-workers and the public, performing work activities without

accommodations, working on regular, continuing basis, and dealing with stress.  (AR 371.)

During the mental status examination, Dr. Dahl noted that Plaintiff's attention and

concentration were marred by easy distraction.  (AR 369.)  He also noted that Plaintiff had

reduced persistence, pace, and motivation.  (AR 369.)  For the mood/affect section of the mental

status examination, Dr. Dahl wrote:

> The claimant's mood was depressed and easily irritable.  She finds herself tearful.
> Sometimes she screams at her children.  She becomes angry and she feels sad
> often.  She sleeps intermittently from 10 PM until 7 AM, getting about 3-4 hours
> broken sleep during this time period.

(AR 369.)

Most of these statements in the mood/affect section are Plaintiff's self-complaints.  (AR

369.)  It appears that the only observation by Dr. Dahl in the mood/affect section is that "[t]he

claimant's mood was depressed and easily irritable."  (AR 369.)  In Ryan, the doctor recorded

the plaintiff's symptoms relayed to him by the plaintiff, but also recorded several of his own

clinical observations of the plaintiff.  Ryan, 528 F.3d at 1199.  Here, Dr. Dahl did not record his

own clinical observations of Plaintiff unlike the doctor in Ryan.

The ALJ need not accept the opinion of any physician that is brief, conclusory, and

unsupported by clinical findings.  Thomas, 278 F.3d at 957.  As discussed above, the ALJ

properly discredited Plaintiff's testimony.  The ALJ found that Dr. Dahl's opinion was not

credible because it was based on Plaintiff's subjective symptoms that were inconsistent with her

statements at other times, which the Court finds is a specific and legitimate reason for rejecting

Dr. Dahl's opinion that Plaintiff suffered from major depressive disorder and PTSD and the

associated limitations.  Accordingly, substantial evidence in the record supports the ALJ's

1  finding that Dr. Dahl's opinion is not credible to the extent that it is based upon Plaintiff's

2  subjective complaints.[2]

3     **D.     Third Party Credibility**

4        Plaintiff also contends that the ALJ erred in determining the credibility of Plaintiff's lay

5  witnesses, Plaintiff's daughters.  "In determining whether a claimant is disabled, an ALJ must

6  consider lay witness testimony concerning a claimant's ability to work."  Stout, 454 F.3d at

7  1053; 20 C.F.R. § 404.1513(d)(4).  "Lay witness testimony is competent evidence and cannot be

8  disregarded without comment."  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting

9  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)).  The ALJ must give specific reasons

10  germane to the witness in discounting the lay witness testimony.  Stout, 454 F.3d at 1056;

11  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  If the ALJ gives reasons for rejecting the

12  claimant's testimony that are equally relevant to similar testimony provided by lay witnesses,

13  that would support a finding that the lay witness testimony is similarly not credible.  Molina, 674

14  F.3d at 1114.

15        1.     Arlene Rosas's Testimony

16        The ALJ gave Arlene Rosas's June 1, 2012 third party statement little weight because the

17  physical limitations stated by Ms. Rosas are not supported by the evidence in the record and her

18  statements are not consistent with the findings of the State Agency physicians.  (AR 27.)  The

19  ALJ may discount lay witness testimony that conflicts with the medical evidence.  Lewis v.

20  Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

21        Ms. Rosas stated that Plaintiff has trouble lifting, squatting, bending, standing, reaching,

22  walking, kneeling, climbing stairs, and using her hands.  (AR 159).  Ms. Rosas also stated that

23  Plaintiff can only stand for less than an hour and lift 10 pounds.  (AR 159.)  However, the

24  medical documentation in the record shows 5/5 strength, normal range of motion, normal

25  sensation and normal gait.   (AR 27, 241, 242, 250, 269, 305, 350, 357, 369, 420, 469.)

26  Therefore, the Court finds that the ALJ properly considered that Ms. Rosas's statements

27

28  [2]  Since the Court finds that the ALJ did not err in rejecting Dr. Dahl's opinion, the Court elects not to address the harmless error argument.

regarding Plaintiff's physical limitations were not supported by the evidence in the medical record.

Further, Ms. Rosas stated that Plaintiff was limited in her hearing, memory, completing tasks, concentration, understanding, and following instructions. (AR 159.) However, Dr. Glenn Ikawa found that Plaintiff is not significantly limited in her ability to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, complete a normal work-day and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (AR 383-84.) Dr. Ikawa also found that Plaintiff is not significantly limited in the mental activities for social interaction and adaptation. (AR 384.) Dr. Ikawa only found moderate limitations for Plaintiff's ability to understand and remember detailed instructions and her ability to carry out detailed instructions. (AR 383-84.)

Dr. S. Reddy, a State Agency physician, noted that Plaintiff's gait, strength, and sensation were normal. (AR 366.) Dr. Reddy projected that Plaintiff would continue to improve and be nonsevere physically by twelve months after the alleged onset date. (AR 366.) Dr. R. Fast, a State Agency physician, noted that the record contains a physical examination including musculoskeletal exams and that there were no abnormalities. (AR 481.) Dr. Fast found that Plaintiff's physical complaints have been settled and that there are no functional limitations. (AR 481-82.) Therefore, Ms. Rosas's statement is inconsistent with the findings of the three State Agency physicians.

The ALJ provided specific reasons germane to the witness in discounting the lay witness testimony of Ms. Rosas. <u>Stout</u>, 454 F.3d at 1056. Accordingly, the ALJ did not err in determining the credibility of Ms. Rosas's testimony.

\ \ \

2.      Sandy Torres's Testimony

The ALJ gave Sandy Torres's statement little weight for the same reasons that he discounted Plaintiff's testimony.  (AR 27-28.)  Plaintiff argues that rejecting the statement by Ms. Torres for the same reasons the ALJ rejected Plaintiff's testimony is not a reason germane to Ms. Torres.  Defendant contends that the ALJ provided several bases for finding Plaintiff not credible, so therefore, those reasons apply equally to the lay witness testimony.  Defendant also argues that any error by the ALJ was harmless because the lay witness testimony does not differ in any significant manner from Plaintiff's own subjective allegations.

Ms. Torres stated that Plaintiff is depressed and cannot do anything and that she spends her day at home, either sitting outside or sleeping.  (AR 191-92.)  Ms. Torres also stated that Plaintiff has trouble lifting, squatting, bending, climbing stairs, and completing tasks.  (AR 196.)  Further, Ms. Torres stated that Plaintiff sometimes has trouble concentrating.  (AR 196.)  Ms. Torres stated similar limitations to the ones that Plaintiff described.  (AR 162-69; 191-208.)  As discussed above, the ALJ properly discounted Plaintiff's testimony.  Therefore, the Court finds that the ALJ properly gave little weight to Ms. Torres's statement.

To the extent that the ALJ erred by not indicating the germane reasons for discounting Ms. Torres's statement, any such error is harmless.  As Defendant notes, an ALJ's failure to discuss a lay witness's testimony is harmless where that testimony duplicates plaintiff's testimony, which was already rejected by the ALJ.  See Molina v. Astrue, 674 F.3d at 1122.

E.      Further Development of the Record

Plaintiff contends that due to the evidence of Plaintiff's Hungry Bone Syndrome, the ALJ had a duty to further develop the record.  Plaintiff argues that there is no medical opinion that supports the finding that Plaintiff could perform work at the medium exertional level, which requires standing and walking for six hours out of an eight-hour day and lifting and carrying 50 pounds occasionally and 25 pounds frequently.

The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  Further, the ALJ's

1   duty to fully develop the record is heightened where the claimant may be mentally disabled and,

2   therefore, unable to protect her own interests.  Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir.

3   1992).  The Commissioner has broad latitude in whether to order a consultative examination and

4   the government is not required to bear the expense for an examination of every claimant.  Reed

5   v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001).  There are cases in which a consultative

6   examination would be required, "including those in which additional evidence needed is not

7   contained in the records of the claimant's medical sources, and those involving an ambiguity or

8   insufficiency in the evidence that must be resolved."  Reed, 270 F.3d at 842 (internal

9   punctuation and citations omitted).  A specific finding of ambiguity or inadequacy in the record

10   is not required to trigger the necessity to further develop the record where the record itself

11   establishes the ambiguity or inadequacy.  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

12      Dr. Eve diagnosed Plaintiff with Hungry Bone Syndrome in September 2012.  (AR 465.)

13   Plaintiff argues that her Hungry Bone Pain lingered for over a year because Nurse Practitioner

14   Whittaker diagnosed hip and knee pain in June 2013 and Dr. Glover diagnosed hip pain in

15   August 2013, which triggered the ALJ's duty to develop the record.

16      In this instance, the ALJ had several years of medical records before him for review.

17   State Agency physicians Dr. Reddy and Dr. Fast reviewed the medical evidence in the record

18   and concluded that Plaintiff's physical impairments would not be severe 12 months from the

19   alleged onset date.  (AR 365-66, 480-82.)  On July 10, 2012, Dr. Reddy noted that he suspected

20   "hungry bones," but concluded that Plaintiff would continue to improve and be non-severe by

21   12 months from the alleged onset date.  (AR 365-66.)  On June 25, 2013, Dr. Fast noted that

22   Plaintiff's physical examination, including musculoskeletal examination, indicated no abnormal

23   findings.  (AR 481.)  Dr. Fast concluded that Plaintiff's physical complaints have been settled

24   and that there are no functional limitations.  (AR 481-82.)

25      The ALJ actually gave Plaintiff the benefit of the doubt and limited her to medium

26   exertional level, which is more restrictive than the State Agency physicians or any other medical

27   providers found.  "A report of a non-examining, non-treating physician should be discounted

28   and is not substantial evidence when contradicted by all other evidence in the record."

1    Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).  However, Dr. Reddy and Dr. Fast's

2    opinions are not contradicted by all other evidence in the record.  Their opinions are consistent

3    with other evidence in the record.  Therefore, Dr. Reddy and Dr. Fast's opinions provide support

4    for the ALJ's RFC finding, even though the ALJ's RFC was more restrictive than either Dr.

5    Reddy or Dr. Fast opined.

6           Viewing the record as a whole, the Court finds that the ALJ did not err by rendering a

7    decision without ordering a consultative examination of Plaintiff's physical impairments.  The

8    record does not indicate that the ALJ or any medical provider found that the evidence was

9    insufficient to make a determination.  The facts in this case are not similar to other instances in

10   which the ALJ was found to have a duty to further develop the record.  See Tonapetyan, 242

11   F.3d at 1150-51 (ALJ erred by relying on testimony of physician who indicated more

12   information was needed to make diagnosis); McLeod, 640 F.3d at 887 (ALJ erred by failing to

13   obtain disability determination from the Veteran's Administration); Bonner v. Astrue, 725

14   F.Supp.2d 898, 901-902 (C.D. Cal. 2010) (ALJ erred where failed to determine if claimants

15   benefits were property terminated or should have been resumed after his release from prison);

16   Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D. Cal. 2006) (ALJ erred by failing to

17   develop record where he relied on the opinion of a physician who recognized he did not have

18   sufficient information to make a diagnosis).

19          The ALJ did not determine that additional examination or information was needed to

20   make his decision; and it is not this Court's function to second guess the ALJ's conclusions and

21   substitute the court's judgment for the ALJ's.  Therefore, the Court finds that the ALJ did not

22   err by not further developing the record regarding Plaintiff's Hungry Bone Syndrome.

23                                                    **V.**

24                                          **RECOMMENDATIONS**

25          Based on the foregoing, it is HEREBY RECOMMENDED that Plaintiff's appeal from

26   the final decision of Defendant Commissioner of Social Security be DENIED and judgment be

27   entered in favor of Defendant Commissioner of Social Security and against Plaintiff Esther

28   Rosas.

1    These findings and recommendations are submitted to the district judge assigned to this

2  action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within thirty (30)

3  days of service of this recommendation, any party may file written objections to these findings

4  and recommendations with the Court and serve a copy on all parties.  Such a document should be

5  captioned "Objections to Magistrate Judge's Findings and Recommendations."   The district

6  judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. §

7  636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may

8  result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014)

9  (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

10

IT IS SO ORDERED.

11

12  Dated:  __June 29, 2016__                    _____

                                               UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28